---

## In re CONN.

(District Court, D. Oregon. April 17, 1901.)

### No. 230.

**1. BANKRUPTCY—DISCHARGE—FRAUDULENT CONCEALMENT OF ASSETS.**

Facts and circumstances showing a fraudulent concealment of assets by a bankrupt, which will defeat his right to a discharge, must be proved, and will not be deduced as a matter of doubtful inference, from other facts and circumstances.

**2. SAME.**

A bankrupt and his wife were stockholders in a company which owned and conducted a retail drug store. The property of the company was conveyed to a trustee, with power to sell the same, and was subsequently sold to the bankrupt's wife; the purchase money being furnished by a wholesale house, which organized a new company to take the property, retaining half the stock, and assigning the other half in equal shares to the bankrupt and his wife, but delivered to them but one share each, re-

taining the remainder as security for the purchase money advanced. This transaction was eight months before the filing of the petition in bankruptcy. The bankrupt scheduled but the one share of stock held by him. *Held* that, in the absence of evidence of actual fraudulent intent, or that the stock in the hands of the wholesale house was worth more than the bankrupt would be compelled to pay to obtain it, its omission from the schedule did not constitute a fraudulent concealment of assets, or the making of a false oath, which barred his right to a discharge.

In Bankruptcy. On objections to application for discharge.

Charles W. Fulton, for objecting creditors.

F. D. Winton, for bankrupt.

BELLINGER, District Judge. This matter comes on to be heard upon objections, filed by certain creditors of the bankrupt, to his discharge, upon the ground that he has concealed, while a bankrupt, from his estate in bankruptcy, property belonging to his trustee, and that he has made a false oath in relation thereto in the bankruptcy proceeding. The facts, in substance, are as follows: Conn, prior to the filing of the petition in bankruptcy, was a stockholder in a company known as the "Estes-Conn Drug Company," engaged in carrying on a retail drug store in the city of Astoria, Or. The other stockholders in the company were Conn's wife and one Estes and wife. The business of the corporation not being in a satisfactory condition, and disagreements existing between its stockholders and directors as to the management of its business, the corporation, on the 2d day of December, 1898, constituted Louis Blumauer, of Portland, its trustee, with authority to take possession of the drug store and business; and if, in his judgment, it was to the best interests of all concerned that the same should be sold, then said trustee was authorized to sell and transfer said property, either at private or public sale, to the highest bidder, upon 10 days' notice to the parties in interest. Thereafter, and in May, 1900, after twice advertising such property for sale, the trustee sold out the drug store and business to Mrs. Conn, the wife of the bankrupt, for $1,680. The money for the purchase was furnished to Mrs. Conn by the Blumauer-Frank Drug Company. Thereupon a new drug company was organized, at the instance of the Blumauer-Frank Company, with a capital stock of $2,000, divided into 40 shares, of $50 each. These transactions took place more than eight months prior to the filing of the petition in voluntary bankruptcy by the bankrupt, Conn. Conn, in filing his schedules in bankruptcy, represented himself as the owner of one share in this new drug company. The objecting creditors now say that Conn was in fact the owner of one-half of the 40 shares in the capital stock of the company; that 10 shares of this stock stood in the name of Mrs. Conn, and the other 10 shares in the name of Conn himself; but that, as a matter of fact, the entire 20 shares belonged to the bankrupt. The creditors further say, as to the value of this stock, that at the time of the sale by the trustee the stock and business on hand were of the value of $5,000, and that said stock has been kept up in the present company, and is of equal value with that of its predecessor. So far as appears, no book of subscription of stock was kept. None has been found, although diligent search has been made therefor. It is therefore diffi-

cult to determine whether there was any such subscription, and, if not, how the shares of the company came to be issued. It is apparent that the new drug company was organized by the Blumauer-Frank people in the furtherance of their own business as wholesale dealers, and that they disposed of the stock as best suited their own convenience. It appears that, in the allotment of stock, one half was taken by the Blumauer-Frank Company, and the other half divided between Conn, the bankrupt, and his wife, and that 18 of the shares of Conn and his wife were held by the Blumauer-Frank Company as security for $837, that being one-half of the purchase price of the original stock bought in by Mrs. Conn at the trustee's sale; so that it would appear that the purchase at that sale was made by Mrs. Conn under an arrangement with the Blumauer-Frank Company, who, allowing her and her husband one-half of the stock in the new company, kept that interest to secure themselves for the half of the purchase price paid by Mrs. Conn at the trustee's sale. It was the Blumauer-Frank Drug Company's plan to continue the business at Astoria, under the management of Conn and his wife, and to that end to interest Mr. and Mrs. Conn in the business with themselves. When Conn filed his petition in bankruptcy he had but one share of the stock of the new company in his possession. The other nine shares were held by the Blumauer-Frank Drug Company as security for the payment of the stock. The same is true as to the interest of Mrs. Conn. Conn, in his statement of assets, reported but one share of stock as belonging to him, and subsequently testified to the same effect. The objecting creditors contend that the entire 20 shares of stock are the property of Conn, and that he fraudulently concealed the fact of his ownership, and testified falsely in respect to it, for the purpose of defrauding his creditors. Before filing his petition in bankruptcy, Conn sent his wife to Portland to make inquiry of the Blumauer-Frank Company as to his holdings in the company. L. Blumauer testifies that he told Mrs. Conn that her husband had only one share of stock; that he did this because he considered the other nine shares tied up as collateral.

The transfer of the business of the Estes-Conn Drug Company to Blumauer as trustee, and the subsequent sale by Blumauer, under his trust, of the property to Mrs. Conn, are not, and cannot be, attacked in this proceeding. There is nothing in the transaction that tends to impeach its fairness and good faith. It was a proceeding in the interest of creditors, so far as appears. Blumauer testifies that the property had been advertised twice prior to the sale, and there is nothing to show that the price paid was not adequate, under the circumstances. This is the source of the title which Conn and his wife have in the stock standing in their names. There is no complaint about it, and no ground for complaint; and there is no reason, in law or in morals, why the stock held by Mrs. Conn should be treated as the property of her husband. As already appears, the money with which she paid for the stock was furnished by the Blumauer-Frank Company. If the company had seen fit to allow her to retain exclusive ownership in the new concern, the husband's creditors would have had no reason to complain. The Blumauer-Frank Company sub-

scribed one half of the stock in the reorganized company, and retained all but two shares of the remaining half to secure themselves for the money so advanced. The interest of the bankrupt consists of the 10 shares held by him. Was his representation, then, a false and fraudulent one? There is nothing to show that it was fraudulent. The inference is that he knew of the purpose of the Blumauer-Frank Company to continue the business at Astoria under some such arrangement as was in fact effected; but of the details of this, as to the interest which was to be assigned to him, he was ignorant. In law, the nine shares held by the Blumauer-Frank Company, assigned by him, were his property; but, since they were not paid for, his act in omitting these shares from his schedule of assets, upon the representation of Blumauer to Mrs. Conn that Conn owned but one share, ought not to be attributed to an improper motive. It does not appear that these shares are now, or have at any time been, worth more than the debt for which they are held as collateral security. In equity ·the transaction amounts to one of option on the part of Conn to acquire these shares by paying for them, which he has not yet done.

In order to justify a complaint at what has been done, it ought to appear that these shares have a value substantially higher than their par value; and this does not appear, nor is there any fact or circumstance in the case which warrants an inference that such is the fact. It is claimed that the original stock of the Estes-Conn Company was worth $5,000, and that the present stock is of equal value. For the purposes of this case, the bankrupt's property must be treated as of the value it will bring at a sale, and it must be remembered that the property of the Estes-Conn Company sold for $1,-675. There is nothing to impeach the openness and fairness of this sale, or that questions the reasonableness of the price at which the property was sold. By the same test, the property of the present company cannot be said to be worth more than the par value of the stock of that company; and the probabilities are that the nine shares of stock held by the Blumauer-Frank Company for the bankrupt when he shall pay for them are not worth more than the $418.50 for which these shares are held, and until it appears that this stock is worth appreciably more than this sum there is no room to complain on the part of the creditors. The entire transaction is simply one where a large creditor has undertaken to preserve the business of the insolvent corporation by organizing a new corporation, and has seen fit to interest a part of the old owners in the new venture.

The creditors' interest in this transaction must be measured by the actual present value of the bankrupt's interest held for him by the Blumauer-Frank Company, and that interest consists of nine shares of stock not included in the bankrupt's schedule of assets, and one share that is so included. Facts and circumstances, to justify an inference of fraud, must be proved, not deduced as a matter of doubt-ful inference from other facts and circumstances. As already appears, with the sale of the business of the Estes-Conn Drug Company by L. Blumauer, as trustee, to Mrs. Conn, for a consideration furnished by the Blumauer-Frank Drug Company, this court has noth-

ing to do. That is an accomplished and unquestioned transaction in the case, and is the means whereby the stock sought to be applied as a part of the bankrupt's estate was acquired. It may, I think, be assumed that the Blumauer-Frank Company would not have gone into an arrangement to give Conn and his wife stock for $838 that had a value of $2,500, or that was worth appreciably more than they required to be paid for it. That they dealt with Conn and his wife upon a strictly business basis is shown in the fact that they retained all but the two shares necessary to qualify the Conns to hold office in the corporation as security for the price to be paid. In the transaction out of which the bankrupt's interest in the stock in question arises the creditors have lost nothing, and I am satisfied that out of such stock, if it was treated as a part of the bankrupt's estate, they could realize nothing above the purchase price for which it is held as security. The objections to the bankrupt's discharge are overruled.